[Civ. No. 14900.   First Dist., Div. One.   Apr. 8, 1952.]

DORRAINE ROY, Respondent, v. RALPH S. ROY, JR., Appellant.

Natalie J. Holly for Appellant.

Frederick W. Kant and Allan H. Fish for Respondent.

WOOD (Fred B.), J.—December 30, 1941, a final decree of divorce was rendered awarding plaintiff Dorraine Roy the custody of the minor daughter of the parties and ordering

defendant Ralph S. Roy to pay plaintiff $50 a month for the support of the daughter. Defendant voluntarily increased the amount to $60 a month, commencing June 1, 1948.

October 13, 1950, the trial court entered a minute order directing the defendant to pay $100 a month for the support of the daughter. October 19, 1950, the court made a written order modifying the final decree, as of October 13, to require defendant to pay $100 a month. Defendant has appealed, claiming (1) he is without financial ability to pay the increased amount, (2) an insufficient showing of need for the increased amount, and (3) the trial court committed reversible error in permitting to be withdrawn a certain exhibit which was later returned to the court and included in the record upon this appeal.

(1) *The evidence supports the implied finding that appellant is financially able to pay the increased amount.* Appellant is a dairy farmer. He owns 175 head of dairy cattle valued at $200 per head, and machinery and equipment valued at $22,500. He has the use of his father's ranch rent free, save that he pays the taxes thereon, averaging approximately $1,400 a year. At the time of the hearing he had a total indebtedness of $22,000, consisting of a bank loan of $13,000 secured by a chattel mortgage upon the cattle, and a personal loan of $9,000. From a stipulation of the parties filed in this court June 25, 1951, it appears that his personal indebtedness now amounts to $29,100, the bank loan having increased to $14,100 and appellant having incurred an additional personal loan of $6,000 incident to effecting a property settlement with his second wife, from whom he is now divorced. There is no evidence in the record concerning the terms of these loans, such as the number of years within which they must respectively be paid or the amount, if any, which must be paid annually or by the month. Nor is there any evidence concerning the facility with which appellant might refinance any of these loans should the creditor effectively insist upon immediate liquidation. It is inferable that with the assets of the kind and value which he has, and a going business, appellant has the ability to pay these loans, or refinance them, as they fall due.

Appellant testified that he embarked upon this business in 1940 or 1941, and that he made money in 1946 and 1947 ("they were good years") but sustained heavy losses in 1948, 1949 and 1950. His seeming loss in 1948 resulted from including in his expenses for that year an item of $29,651 for

livestock purchased, really a capital outlay. Adjustment as to that item indicates that he gained $15,151 instead of losing $14,500 in 1948.

Some of the cows purchased in 1948 were infected with brucellosis. These he isolated and immediately replaced with other cows to keep up production. A portion ($2,000) of his loss on the infected cows appears in his accounts for the year 1949. However, in this year, he listed in his expenses an item of $3,570 for cows purchased in 1949. Adjustment as to the latter item indicates a gain of $1,400 instead of a loss of $2,170 in 1949. In addition, both in 1948 and 1949, when striking a balance between receipts and expenditures, he included a substantial item for depreciation of machinery and equipment. He did not actually set that amount aside in an account or at the bank. He said "I suppose I used the money," apparently not in the conduct of the dairy business. Although he testified that the money he received during the year was paid out in connection with the various expenses of the ranch, this depreciation item ($4,596.65 in 1949) was a mere book entry, not an actual business expenditure. In addition, his 1949 expenditures included an item of $27,021 for feed, as against $16,257 in 1948 and $10,945 during the first nine months of 1950. He offered no explanation of this large purchase in 1949. The trial court may reasonably have inferred that he had a carryover of feed in a substantial quantity from 1949 to 1950. It appears that he gained instead of losing in 1949.

Appellant's accounts for the first nine months of 1950 show expenditures of $40,450.48 and receipts of $36,381.73. However, it appears that this loss was due to a temporary set-back which has been overcome. He lost his grade A milk contract in January, 1950, and was delayed in restoring it because his barn burned down in March of that year. He recouped $8,543.80 of the fire loss from insurance which he carried. Effective October 1, 1950, he secured a new grade A milk contract. Such a contract pays about twice as much as did the grade B contract which he had from January to October, 1950. He testified that the reason for his 1950 loss was the loss or suspension of the grade A contract. This and other evidence supports an implied finding by the trial court that from and after the date of the hearing (October 13, 1950) appellant would again operate his dairy business at a substantial profit, sufficient to enable him to pay the increased amount for the support of his daughter.

■ (2) *The evidence supports the implied finding of need.* The increase in the age of the child from 4 to 13 years and the decreased purchasing power of the dollar from 1941 to 1950, in themselves indicate a change of conditions from which a substantial increase in the cost of support might be inferred.

Respondent kept an account of expenditures for the support of the child, commencing in January of 1942. She entered but $10 a month for food for the child until July, 1947, when that item was increased to $25. In that year the total per month began to increase. In 1949 we note $85 expended in August, $103 in September, $74 in November; in 1950, $98 spent in February, $99 in March, $94 in April, $113 in June, and $80 in September. There are no items of expenditure which appellant considers extravagant. There are some which he deems luxuries, not necessities, such as private instruction in music, dancing, tennis and horseback riding, and occasional attendance at the light opera. He testified that he voiced no objection to these expenditures. He realizes that his daughter is getting out of the baby class and into the young lady class and realizes it costs more money to live than several years ago, also that respondent is taking proper care of their daughter, is doing the best she can to raise the girl properly. His objection is that he is financially unable to pay for more than "basic support"; that respondent earns $107 a month take-home pay (at part-time employment) and should defray the cost of these desirable "luxuries" which he claims he has not the money to meet. This argument depends upon his asserted financial incapacity to pay the additional $40 a month. The trial court has impliedly found, upon sufficient evidence, that he is financially able to meet this obligation, which is primarily his, not respondent's. (See Civ. Code, § 196.) In this connection, we observe that respondent testified she would prefer to give up her employment, remain in the home, and devote more of her time and attention to the care and training of the child. ·

■ (3) *The exhibit which respondent withdrew by permission of the court given October 24 and returned on or before December 9, 1950,* was the book in which respondent had kept account of expenditures made for the support of the child. On the latter date, the court made and filed an order reading in part as follows: "IT APPEARING TO THE COURT that an order for the withdrawal of plaintiff's exhibit numbered one from the Clerks Office was inadvertently made and that

said exhibit numbered one has been at the request of the Court returned to the files in the Clerks Office (there having been added certain items of expenditures not in evidence).

"IT IS THEREFORE ORDERED that the same be included in the Clerk's transcript on appeal."

Appellant argues that because of the possibility of the alteration of this document during the period of its withdrawal, the trial court committed prejudicial, reversible error in permitting its withdrawal and in later ordering its inclusion in the record on this appeal. This point is without merit.

Appellant directs our attention to no entry which he claims has been altered. The court's order of December 9, 1950, did not speak of any "alteration." It said there had been "added certain items of expenditures not in evidence." Examination of the book indicates no alteration, merely a continuation after the day of the hearing (October 13, 1950) of entries of expenditure during the remainder of October, through November and into December, 1950. Those entries, of course, are excluded from consideration upon this appeal. The earlier items were in evidence and are in the record. Even without the consideration of this exhibit, the evidence would amply support the implied finding of need. Upon the cross-examination of respondent, appellant brought out significant items of expenditure. They appear in the reporter's transcript.

As found by the trial court, the withdrawal was inadvertently made. The court and respondent acted in entire good faith. No harm has been done. Appellant's rights have in no way been prejudiced.

Incidentally, we observe that on December 11, 1950, respondent served upon appellant, and on December 13, 1950, filed with the trial court, her designation of documents to be included in the clerk's transcript. Therein she specifically mentioned plaintiff's exhibit No. 1, the account book under discussion and "Any order of the above court directing the return of plaintiff's Exhibit No. 1 to the court or its clerk, or in any way pertaining to said Exhibit." Then was the time for appellant to present to the trial court, not to this court, any objection he may have had to the inclusion of that exhibit. He had ample time therefor (the clerk's transcript was not certified until February 16, 1951), but did not do so.

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.