[No. A113590. First Dist., Div. Four. Aug. 29, 2006.]

SONOMA STATE UNIVERSITY and OCTAGON RISK SERVICES, Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and LESLEY HUNTON, Respondents.

## Counsel

Mullen & Filippi, David M. Reynolds and Anne Hernandez for Petitioners.

No appearance for Respondent Workers' Compensation Appeals Board.

Kneisler Schondel & Hubbs, Matthew A. Schondel and James R. Kneisler, Jr., for Respondent Lesley Hunton.

## Opinion

**RIVERA, J.**—Workers' compensation law provides that a psychiatric injury is not compensable unless the employee can demonstrate that events of employment "were predominant as to all causes combined of the psychiatric injury." (Lab. Code,[1] § 3208.3, subd. (b)(1).) The question presented by this case is whether an employee's psychiatric injury meets the threshold for compensability where the entire psychiatric disability is not predominantly work induced but where one (or more) of several diagnosed psychiatric conditions is entirely (or predominantly) work induced. We conclude that a psychiatric injury cannot be parsed into separately diagnosable components for purposes of satisfying the standard set forth in section 3208.3.

## I. FACTS AND PROCEDURAL BACKGROUND

Respondent Lesley Hunton began working as a police dispatcher for Sonoma State University in 1986. Hunton filed a workers' compensation claim in 2000 alleging an injury to her psyche arising out of and in the course of her employment with petitioner Sonoma State. Hunton alleged the injury resulted from cumulative trauma through August 2000.

An agreed medical evaluator (AME) examined Hunton in 2004. Hunton told the AME her job was stressful. Her main complaint, the AME reported, was that frequent and unexpected sounding of false fire and burglar alarms in the workplace was causing her to suffer from stress and anxiety. The AME further reported that other events and circumstances in Hunton's life also contributed to her psychological and emotional difficulties. The AME opined that for the purposes of apportionment, 65 percent of Hunton's current psychological disability was attributable to nonindustrial factors and the

---

[1] All further statutory references are to the Labor Code.

remaining 35 percent to industrial factors. The AME also stated that Hunton would have likely suffered the psychological disability even if she had never worked for Sonoma State. He identified the following diagnoses based upon the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV):[2] adjustment disorder with mixed emotional features, dysthymic disorder, and avoidant personality traits. The AME identified the adjustment disorder as "Industrially Caused."

The issue in contention during the workers' compensation proceedings was whether Hunton had satisfied her burden of establishing a compensable industrial injury, that is, whether she had proven that her psychological injury was predominantly caused by actual events of employment. The workers' compensation judge (WCJ) found she had met that burden. The Workers' Compensation Appeals Board (WCAB) upheld the decision of the WCJ. It concluded that even though only 35 percent of Hunton's permanent disability was work related, because 100 percent of her *adjustment disorder* was industrially caused, she had satisfied the requirement of section 3208.3.

## II. DISCUSSION

### A. *Standard of Review*

Although the WCAB's findings on questions of fact are conclusive (§ 5953), the construction of a statute and its applicability to a given case are questions of law that this court reviews de novo. (*Rex Club v. Workers' Comp. Appeals Bd.* (1997) 53 Cal.App.4th 1465, 1470–1471 [62 Cal.Rptr.2d 393].) An erroneous interpretation or application of the law is grounds for annulment of the WCAB's decision. (*Id.* at p. 1471.)

### B. *Governing Statute*

Workers' compensation psychiatric injury claims are governed by section 3208.3. Pursuant to that section, an employee seeking compensation for a psychiatric injury must demonstrate "by a preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury." (§ 3208.3, subd. (b)(1).) The courts have interpreted the phrase "predominant as to all causes" as a requirement that more than 50 percent of the injury's causation must be work related.

---

[2] The DSM-IV is recognized by the courts as a standard reference work containing a comprehensive classification and terminology of mental disorders. (See *Money v. Krall* (1982) 128 Cal.App.3d 378, 384, fn. 2 [180 Cal.Rptr. 376].)

(*Department of Corrections v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 810, 816 [90 Cal.Rptr.2d 716].) An employee who is unable to meet this threshold for establishing industrial causation has not demonstrated a compensable injury and cannot receive a workers' compensation award for the injury.

### C. Interpretation of "[P]sychiatric [I]njury" as Used in Section 3208.3

Petitioners Sonoma State and Octagon Risk Services (collectively Sonoma State) argue that Hunton did not meet the predominant causation threshold for compensation eligibility because work related events had caused only 35 percent of Hunton's overall psychiatric disability. Hunton argues, and the WCAB agreed, that she did satisfy the threshold requirement because *one* of her diagnosed psychological disorders was *wholly attributable to work-related causes* and, thus, constituted a compensable psychiatric injury. The question, then, is how one defines "psychiatric injury" when calculating industrial causation under section 3208.3, subdivision (b)(1). Must the predominance of industrial factors be proven with respect to the psychiatric injury in its entirety? Or, does a separately identifiable disorder, comprising only a portion of the psychiatric disability but wholly work related, constitute a compensable psychiatric injury? As there are no judicial precedents addressing this issue, we rely on principles of statutory construction for guidance.

■ The primary purpose of statutory interpretation is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. (E.g., *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332 [85 Cal.Rptr.2d 86].) "Statutory interpretation begins with the text and will end there if a plain reading renders a plain meaning: a meaning without ambiguity, uncertainty, contradiction, or absurdity." (*Oden v. Board of Administration* (1994) 23 Cal.App.4th 194, 201 [28 Cal.Rptr.2d 388].) The court may also resort to the legislative history of the statute and the historical circumstances of its enactment when attempting to ascertain legislative intent. (*Pacific Gas & Electric Co. v. Workers' Comp. Appeals Bd.* (2004) 114 Cal.App.4th 1174, 1180 [8 Cal.Rptr.3d 467] (*PG&E*).) Applying these rules of interpretation, a court must "select the [statutory] construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

Looking first to the language of the statute, it defines the term "psychiatric injury" as follows: "A psychiatric injury shall be compensable if it is a mental disorder which causes disability or need for medical treatment, and it is diagnosed pursuant to . . . the terminology and diagnostic criteria of . . . psychiatric diagnostic manuals generally approved and accepted nationally by practitioners in the field of psychiatric medicine." (§ 3208.3, subd. (a).) A fair reading of this language precludes neither the WCAB's interpretation—that Hunton's adjustment disorder, independent of her other psychological problems, constitutes a compensable psychological injury—nor Sonoma State's interpretation—that the term "psychiatric injury" encompasses *all* diagnoses contributing to the psychological disability. We turn then to legislative history for additional signposts.

Section 3208.3 was originally enacted as "part of the Legislature's response to increased public concern about the high cost of workers' compensation coverage, limited benefits for injured workers, suspected fraud and widespread abuses in the system, and particularly the proliferation of workers' compensation cases with claims for psychiatric injuries." (*Hansen v. Workers' Compensation Appeals Bd.* (1993) 18 Cal.App.4th 1179, 1183–1184 [23 Cal.Rptr.2d 30].) At that time, the Legislature took the unusual step of codifying the underlying purpose of its enactment: "It is the intent of the Legislature in enacting this section to establish a new and higher threshold of compensability for psychiatric injury under this division." (§ 3208.3, subd. (c).) Given this clearly articulated legislative purpose, "any interpretation of the [statute] that would lead to more or broader claims should be examined closely . . . ." (*PG&E, supra,* 114 Cal.App.4th at p. 1182.)

Section 3208.3 originally provided that a psychiatric injury was compensable if it was at least 10 percent attributable to industrial factors. (Stats. 1989, ch. 892, § 25, p. 3003.) But the Legislature further tightened the requirements for compensating psychiatric injury in 1993 by amending section 3208.3 to require that industrial factors be "predominant as to all causes combined of the psychiatric injury." (§ 3208.3, subd. (b)(1); see Stats. 1993, ch. 118, § 1, p. 1225.) This amendment was apparently intended to further combat fraudulent psychiatric claims. (*Sakotas v. Workers' Comp. Appeals Bd.* (2000) 80 Cal.App.4th 262, 272–273 [95 Cal.Rptr.2d 153].) "In recognition of this intent, the Governor's signature message to the California Assembly contained the following language: [¶] 'This package of reforms saves money by tightening the standard for stress claims in the system, the fastest growing type of claim in . . . workers' compensation.' " (*Id.* at p. 273.)

In *Lockheed Martin Corp. v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1237 [117 Cal.Rptr.2d 865], this court (Court of Appeal First Appellate District, Division Four) considered whether the compensability standard of section 3208.3 governed not only purely psychiatric injuries, but also psychological disorders caused by work-related physical injuries. In *Lockheed Martin*, the WCAB had interpreted the statute narrowly to exclude from the "predominant cause" requirement any psychiatric injuries that were the result of physical injuries. (*Lockheed Martin*, at p. 1245.) This court reversed, holding that such an interpretation could not be squared with the Legislature's intent to "[take] aim[] *primarily* at phony stress claims." (*Id.* at p. 1249.) "[T]he potential for fraud and the problems inherent in psychiatric claims, 'notably vagueness in defining the injury and problems of establishing industrial causation and apportionment' [citation], exist no less because the alleged psychiatric injury is related to a physical injury." (*Ibid.*, fn. omitted.)

Similarly, here, the WCAB's interpretation would undermine rather than effectuate the Legislature's purpose. Allowing each diagnosable psychological disorder to be analyzed separately for compensability would create a lower rather than a higher threshold for obtaining compensation, would result in more rather than fewer stress claims, and would provide more rather than less potential for fraud. Further, the WCAB's interpretation of the statute could lead to absurd or unfair results. If a claimant were allowed to isolate particular disorders for the purpose of establishing compensability, then a claimant with one industrially-caused disorder contributing only 10 percent to his or her psychological disability would meet the causation threshold required for compensation eligibility while a claimant with an undifferentiated diagnosis, whose injury is 50 percent attributable to industrial causes, would not meet the threshold. This interpretation would award compensation to those applicants whose experts are prompted to parse the psychological injuries into separate diagnoses even though the work-induced components are de minimis, while precluding compensation for employees whose work was a substantial factor in causing their injuries but whose experts did not or could not make compartmentalized diagnoses. We are satisfied this could not have been what the Legislature meant to do in adopting section 3208.3.

█ Accordingly, we hold that a claimant's psychiatric injury satisfies the standard for compensability set forth in section 3208.3 only if it is proven that events of employment were predominant as to all causes combined of the psychiatric disability taken as a whole.

## III. DISPOSITION

The award of workers' compensation benefits is annulled, and the matter is remanded to the WCAB with directions to enter an order denying such benefits. The parties shall bear their own costs in the proceedings before this court.

Ruvolo, P. J., and Reardon, J., concurred.