[No. B182096. Second Dist., Div. Eight. Feb. 27, 2007.]

YESEM ASFAW, Plaintiff and Appellant, v.
ZEMAN WOLDBERHAN, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion parts 1b., 1c., and 2.

COUNSEL

Hahn & Hahn, Don Mike Anthony and Candice K. Rogers for Plaintiff and Appellant.

Law Offices of Gary W. Kearney and Gary W. Kearney for Defendant and Respondent.

OPINION

**RUBIN, J.**—Plaintiff and appellant Yesem Asfaw (mother) appeals from the judgment pursuant to which defendant and respondent Zeman Woldberhan

(father) is required to pay monthly child support in the amount of $882. Mother contends the trial court erred: (1) in calculating child support payments; (2) in failing to order father to pay one-half of the children's uninsured medical expenses; and (3) in failing to make the child support payments retroactive to the filing of mother's initial order to show cause. We conclude that the trial court properly refused to make child support payments retroactive to the filing of the initial order to show cause, but reverse and remand with instructions to recalculate the child support payments and to make an order concerning payment of the children's uninsured medical expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the original petition for dissolution of marriage, mother and father were married on June 18, 1994, and had two children: Addis, born in November 1994; and Mikias, born in November 1996. The couple legally separated on March 5, 1999, and mother filed the petition for dissolution on May 26, 1999. On July 7, 1999, father filed a response and request for (1) dissolution of marriage based on irreconcilable differences, and (2) nullity of marriage based on prior existing marriage. On August 24, 1999, the court made various custody and support orders.

The following years were contentious. A bifurcated trial commenced on August 27, 2004, and on that date a judgment of nullity was granted.[1] Evidence was completed on October 8, 2004. In a judgment filed November 4th, the trial court awarded parents joint legal and physical custody of the children with mother's home being the children's primary residence and mother having sole responsibility for decisions regarding medical and psychological treatments.

On November 23d, the trial court filed a memorandum of intended decision regarding child support. Adopting the dissomaster printout as its findings, the trial court ordered father to pay monthly child support, retroactive to September 1, 2004, in the amount of $882.

Mother requested a statement of decision regarding, in pertinent part, father's actual gross income from the apartments he owns, father's actual business expenses attributable to the apartments, father's income from all sources available for child support and father's net income, after taxes,

---

[1] Father maintained that mother was still married to her former husband, Dawit Tesfaye, when she married father. Mother maintained that she was never married to Tesfaye. At the trial on August 27, 2004, mother testified that, at the time she married father, her prior marriage had not yet been dissolved.

available for child support. Pursuant to the trial court's order, father prepared a proposed statement of decision. Mother objected to the proposed statement.

In a statement of decision filed February 1, 2005, the court found, in pertinent part, as follows: (1) father's gross income from the apartments was $384,000 in 2003; (2) father's business expenses for 2003 attributable to those apartments was $357,000; (3) father owns only 50 percent of one of the apartments; (4) father's "actual gross annual income" from a parking lot he operated was $30,000 ($2,500 per month); (5) father's lease of the parking lot is a valid transaction; (6) gross income from the parking lot is attributable to father for purposes of calculating child support; (7) father's business expenses attributable to the parking lot are $1,400 per month ($16,800 annually); (8) the business expenses listed by father on attachment 2 to his June 26, 2004, income and expense declaration were legitimate; (9) the monies father received from selling or refinancing real properties held in his name were paid to buy out the interests of others who held an interest in the properties and so there were no funds the court could consider as income available to pay child support; (10) father's monthly sources of income from which to pay child support were: (a) $1,100 net profits from the parking lot; and (b) $2,250 income from apartment rentals; and (11) father's net monthly income was $2,685.

In a judgment filed that same day, the court found: (1) father's time with the two minor children is 20 percent; (2) father has gross monthly income of $3,350; (3) mother has gross monthly income of $3,771; and (4) mother has monthly child care expenses of $350. Based on those findings, the court ordered (1) father to pay child support in the amount of $882 per month; (2) mother and father to each pay one-half of the children's private school tuition for the 2004–2005 school year; and (3) father to pay mother's attorney's fees in the amount of $10,000.

Mother filed a timely notice of appeal.

## DISCUSSION

1. *Child Support*

Mother contends the trial court erred in calculating child support. She argues: (1) depreciation of father's rental properties should not have been used to reduce father's business income, and (2) the evidence was otherwise insufficient to support the finding that father's gross monthly income was only $3,350. We agree that depreciation is not properly deductible under the relevant Family Code provisions—section 4058 ("annual gross income") and

section 4059 ("annual net disposable income").[2] Because of incorrect treatment of depreciation and for other reasons, the trial court's findings regarding father's gross monthly income are not supported by the evidence.

---

[2] All further undesignated statutory references are to the Family Code.

Section 4058 provides:

"(a) The *annual gross income* of each parent means income from whatever source derived, except as specified in subdivision (c) and includes, but is not limited to, the following:

"(1) Income such as commissions, salaries, royalties, wages, bonuses, rents, dividends, pensions, interest, trust income, annuities, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, social security benefits, and spousal support actually received from a person not a party to the proceeding to establish a child support order under this article.

"(2) Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business.

"(3) In the discretion of the court, employee benefits or self-employment benefits, taking into consideration the benefit to the employee, any corresponding reduction in living expenses, and other relevant facts.

"(b) The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children.

"(c) Annual gross income does not include any income derived from child support payments actually received, and income derived from any public assistance program, eligibility for which is based on a determination of need. Child support received by a party for children from another relationship shall not be included as part of that party's gross or net income." (Italics added.)

Section 4059 provides in part:

"The annual *net disposable income* of each parent shall be computed by deducting from his or her *annual gross income* the actual amounts attributable to the following items or other items permitted under this article:

"(a) The state and federal income tax liability resulting from the parties' taxable income. Federal and state income tax deductions shall bear an accurate relationship to the tax status of the parties (that is, single, married, married filing separately, or head of household) and number of dependents. State and federal income taxes shall be those actually payable (not necessarily current withholding) after considering appropriate filing status, all available exclusions, deductions, and credits. Unless the parties stipulate otherwise, the tax effects of spousal support shall not be considered in determining the net disposable income of the parties for determining child support, but shall be considered in determining spousal support consistent with Chapter 3 (commencing with Section 4330) of Part 3.

"(b) Deductions attributed to the employee's contribution or the self-employed worker's contribution pursuant to the Federal Insurance Contributions Act (FICA), or an amount not to exceed that allowed under FICA for persons not subject to FICA, provided that the deducted amount is used to secure retirement or disability benefits for the parent.

"(c) Deductions for mandatory union dues and retirement benefits, provided that they are required as a condition of employment.

"(d) Deductions for health insurance or health plan premiums for the parent and for any children the parent has an obligation to support and deductions for state disability insurance premiums.

"(e) Any child or spousal support actually being paid by the parent pursuant to a court order . . . .

"(f) Job-related expenses, if allowed by the court after consideration of whether the expenses are necessary, the benefit to the employee, and any other relevant facts.

"(g) A deduction for hardship, as defined by Sections 4070 to 4073, inclusive, and applicable published appellate court decisions. The amount of the hardship shall not be deducted from the

### a. *Depreciation of Rental Property in Calculating Child Support*

In an attachment to his income and expense declaration filed June 26, 2004, father averred that the income derived from his rental properties was $384,000. (Judicial Council Forms, form FL-150.) From that sum, he subtracted $357,000 in expenses, including "depreciation" of $57,000. He thus claimed $27,000 of net income derived from his rental holdings ($384,000 - $357,000 = $27,000). The trial court (1) found the declared "business expenses," including the depreciation allocation, were "legitimate and appropriate business expenses" of father, and (2) calculated child support based on father's net income as reduced by those expenses.[3]

We have found no reported California opinion that addresses the propriety of deducting depreciation from annual gross income under these circumstances.[4] Our analysis of the statutory language, the stated California policies attendant to a parent's child support obligations, and the available authorities on the subject, causes us to conclude that depreciation is not deductible, and that the trial court erred in this respect.

### (i) *Standard of Review*

As in the trial court, we must determine whether depreciation is allowable under the statutory framework by which child support is calculated in California. Typically, an appellate court's review of child support orders is limited to whether the trial court abused its discretion. (See, e.g., *In re*

---

amount of child support, but shall be deducted from the income of the party to whom it applies. . . ." (Italics added.)

[3] On his Judicial Council form income and expense statement, father treated the net income from his rental properties as part of "Salary or wages (gross before taxes)." By statute, such income less certain expenditures, is probably more appropriately reported on the form either as "Investment income . . . [¶] . . . [¶] Rental property income" or "[i]ncome from self-employment, after business expenses for all businesses." In their briefs on appeal, both parties agree the issue is whether depreciation is properly deductible from *annual gross income* under section 4058. A reduction in annual gross income would have the concomitant effect of reducing *net disposable income* under section 4059. It is net disposable income that is an algebraic factor in the final calculation of child support under section 4055. (See fn. 5, *post.*)

[4] In several cases, courts have mentioned depreciation without substantive discussion. See, e.g., *In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 199 [52 Cal.Rptr.3d 744] (trial court considered depreciation in determining the current value of husband's medical equipment); *In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 32 [33 Cal.Rptr.3d 246] (deduction taken for depreciation); *In re Marriage of Rosen* (2002) 105 Cal.App.4th 808, 819 [130 Cal.Rptr.2d 1] (depreciation added back to net income in calculating goodwill); *In re Marriage of Higinbotham* (1988) 203 Cal.App.3d 322, 329 [249 Cal.Rptr. 798] (parties assumed depreciation should be excluded from annual expenses); *Roy v. Roy* (1952) 110 Cal.App.2d 297, 299 [242 P.2d 388] (husband included depreciation of farm machinery and equipment as expenses).

*Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128 [70 Cal.Rptr.2d 109].) However, when an issue on appeal is strictly the interpretation of a statute, we traditionally exercise de novo review. (*Sonoma State University v. Workers' Comp. Appeals Bd.* (2006) 142 Cal.App.4th 500, 503 [48 Cal.Rptr.3d 330].) In the context of child support orders, the rule is no different. (See *In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1371–1372 [40 Cal.Rptr.3d 910] [interpretation of definition of income]; *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282–283 [111 Cal.Rptr.2d 755] (*Cheriton*).) Hence, we review independently the trial court's order.

### (ii) *The Statutory Framework*

■ Court-ordered child support in California is, for the most part, a creature of statute. (See *Cheriton, supra,* 92 Cal.App.4th at pp. 282–283 [child support is "a highly regulated area of the law"].) Sections 4058 and 4059 at issue here are part of division 9, part 2, article 2 of the Family Code. (See Statewide Uniform Guideline, 29F West's Ann. Fam. Code (2004 ed.) foll. § 4050 et seq., p. 103.) The Legislature's expressed intent is that the uniform guidelines are necessary to ensure that state law "remains in compliance with federal regulations for child support guidelines." (§ 4050.)[5] Courts have the power to depart from the guidelines only in "the special circumstances" set forth in article 2. (§ 4052.) In implementing the statutory scheme, the Legislature declared that "the courts shall adhere to" the principles enumerated in the Family Code. (§ 4053.) Even where the Legislature has expressly afforded the courts discretion, "the only discretion a trial court possesses is the discretion provided by statute or rule. [Citations.]" (*In re Marriage of Butler & Gill* (1997) 53 Cal.App.4th 462, 465 [61 Cal.Rptr.2d 781]; see *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 555 [14 Cal.Rptr.3d 482] ["trial court's discretion is not so broad that it 'may ignore or contravene the purposes' " of the child support law]; *In re Marriage of Muldrow* (1976) 61 Cal.App.3d 327, 332 [132 Cal.Rptr. 48].)

■ The actual amount of child support to be paid by the higher earning parent is determined by a formula, the components of which require the computation of each parent's *annual gross income* and *annual net disposable income.* (*Mejia v. Reed* (2003) 31 Cal.4th 657, 669 [3 Cal.Rptr.3d 390, 74 P.3d 166] (*Mejia*).) *Annual gross income* is generally defined in section 4058 as "income from whatever source derived." (See *In re Marriage of Henry* (2005) 126 Cal.App.4th 111, 118 [23 Cal.Rptr.3d 707].) *Net disposable income,* in

---

[5] See 42 United States Code section 667, and generally 42 United States Code section 651 et seq.

turn, is computed by deducting from *annual gross income* amounts actually attributable to certain specified expenses. (§ 4059.)[6]

■    Fueling our interpretation of the statutory guidelines are various policies which the Legislature has identified. In its broadest formulation, "California has a strong public policy in favor of adequate child support." (*Cheriton, supra,* 92 Cal.App.4th at p. 283.) More specifically:

— "The guideline seeks to place the interests of children as the state's top priority." (§ 4053, subd. (e).)

— "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." (§ 4053, subd. (a).)

— "Each parent should pay for the support of the children according to his or her ability." (§ 4053, subd. (d).)

— "Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." (§ 4053, subd. (f).)

(iii)   *Sections 40508 and 40509*

■    Whether depreciation is deductible in calculating net disposable income under the statutory scheme implicates essentially an income statute (§ 4058), and an expense statute (§ 4059). In interpreting these sections we must, of course, ascertain the intent of the Legislature, preferably from the statutory language itself. (*Garcia v. Superior Court* (2006) 137 Cal.App.4th 342, 348 [39 Cal.Rptr.3d 902].) If the words are clear and unambiguous, we need look no further. (*Ibid.*)

■    We start our inquiry with section 4059 since its "net disposable income" is an element of the actual child support formula. (§ 4055.) As we will explain, our time with that provision is brief. Section 4059 lists a number of items that are to be deducted from annual gross income in determining net disposable income: tax payments, FICA contributions, union dues and retirement benefits, health insurance premiums, other child support, job-related

---

[6] The formula is established by statute as: CS = K [HN - (H%)(TN)]. In nonmathematical language, child support (CS) equals: the amount of both parties' income to be allocated for child support (K) multiplied by the high earner's monthly *net disposable income* (HN) less the total of the percentage of time the high earner will have primary physical custody of the children (H%) multiplied by the total *net disposable income* of both parties (TN). (§ 4055, subds. (a) [formula], (b)(1), (4).)

expenses, and hardship deductions. Neither party suggests that depreciation expense falls within any of these categories.[7] Thus, if statutory support for the deduction of depreciation is to be found, it must come from that part of section 4059 which refers to "annual gross income." We turn to section 4058, for it is there that "annual gross income" is given meaning.

■ With one exception not relevant here, section 4058 defines "annual gross income" as "income from whatever source derived." It identifies "rents" as one of 16 examples of covered income. (§ 4058, subd. (a)(1).) Also relevant is subdivision (a)(2) which states that income includes: "Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business." (§ 4058, subd. (a)(2).) There is no mention of depreciation.

Since rental income is expressly included as "annual gross income" under section 4058, subdivision (a)(1), and business operating expenditures are deductible under (a)(2), the question before us is: Does depreciation of rental property constitute an "expenditure[] required for the operation of [husband's] business[?]"

Father's answer is succinctly put in his reply brief, and it comes with a concession that the statutory language is not particularly helpful: "It would appear, without specifics from the Legislature as to what to do with depreciation, there is ample support for the allowance of deductions of a depreciation expense in *Family Code* § 4058." Mother contends that gross income may not be reduced by depreciation.

As the relevant statutes are silent on the treatment of depreciation, we must look elsewhere to ascertain legislative meaning. (See *Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291] [where statute is ambiguous courts may look to other indicia of legislative intent].)

(iv)  *Legislative History of Sections 4058 and 4059*

■ Where the literal language of a statute is not dispositive, we consider its legislative history to see if that process informs our interpretation. " 'Both the legislative history of the statute and the wider historical circumstances of

---

[7] Father does not argue, for example, that his depreciation deduction is a "[j]ob-related expense." (§ 4059, subd. (f).) This category appears to be reserved for those expenses actually incurred by an employee. (See *Stewart v. Gomez* (1996) 47 Cal.App.4th 1748, 1755 [55 Cal.Rptr.2d 531] [tools, uniforms, on-the-job parking expenses, transportation and mileage for commuting to and from work, and other unreimbursed costs that would not be incurred but for employment].)

its enactment may be considered in ascertaining the legislative intent.' [Citation.]" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 659 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

Section 4058, added in 1993, is derived from former Civil Code section 4721 (§ 4721), which was enacted in 1984. (Stats. 1984, ch. 1605, § 4, p. 5664.) "Section 4058 continues former Civil Code Section 4721(f) without substantive change." (Cal. Law Revision Com. com., 29F West's Ann. Fam. Code, foll. § 4058, p. 145.) We, therefore, review the legislative history of section 4721.

On March 3, 1983, Assembly Bill No. 1527 (1983–1984 Reg. Sess.), was introduced to "establish a uniform standard for the establishment of the minimum amount of child support that shall be awarded, based on a specified formula." (Legis. Counsel's Dig., Assem. Bill No. 1527 (1983–1984 Reg. Sess.).) As originally proposed, Assembly Bill No. 1527 would have added as *section 4722* to the Civil Code the following: "In determining the ability of parents to pay the minimum award and to calculate the actual payments to be made by each parent, all of the following provisions shall apply: [¶] (a) The *total gross annual income* of each parent shall be determined. This *shall include income from all sources* except child support payments actually received and public assistance payments issued on the basis of a needs determination test. [¶] (b) The *net disposable income* of each parent shall then be *computed by deducting* from his or her total gross income the *actual amounts attributable to only* the following items: [¶] (1) State and [f]ederal income taxes. [¶] (2) Deductions under the Federal Insurance Contributions Act. [¶] (3) Union dues. [¶] (4) Health insurance premiums, limited solely to those insurance plans providing coverage to the children for whom the support payments are being computed. [¶] (5) Prior child support payments, based on proof of the amount actually paid." (Legis. Counsel's Dig., Assem. Bill No. 1527 (1983–1984 Reg. Sess.), italics added.) Assembly Bill No. 1527 was later amended three times in the Assembly in ways not relevant to the present controversy.

In comments before the California State Senate Judiciary Committee on December 15, 1983, George A. Magid, a member of the board of directors of the organization Equal Rights for Fathers, criticized proposed Civil Code section 4722, subdivision (a) for vagueness: "Total gross income needs to be defined. Is it the Committee's intent to equate the gross receipts of a person who operates a business as a sole proprietor with 'gross income' or only the net income from the business? I suggest it should be the net income, as that is the only appropriate amount to measure a sole proprietor's income and co-ordinate it with someone else on a salary."

An undated document that appears to be staff recommendations for amendments to section 4722 stated as follows: "Current Status: [¶] Section 4722 in the current version of AB 1527 describes the procedures for computing the mandatory minimum award from the parent's gross income. . . . Amendment VI deals with more technical problems in this section. [¶] Problems: [¶] A. Gross annual income as it is currently defined would include all receipts from a business but would not allow for justifiable deductions for the expenses of this business such as for inventory or rent. [¶] . . . [¶] Solution: [¶] Staff proposes the following amendment to Section 4722. [¶] Section 4722 (as amended) [¶] . . . (b) The annual net disposable income of each parent shall then be computed by deducting from his or her annual gross income the actual amounts attributable only to the following items, after which the remainder is adjusted to reflect the monthly net disposable income of each parent: [¶] . . . [¶] (2) *Expenses directly incurred in carrying on a trade or business . . . as defined in the California Revenue and Tax Code Section 17072.* [¶] *(3) Deductions for property held for the production of rents and royalties as defined in California Revenue and Tax Code Section 17072.*" (Italics added.)

In 1983, at the time Assembly Bill No. 1527 (1983–1984 Reg. Sess.) was wending its way through the legislative process, California Revenue and Taxation Code section 17072, the statute cited in the staff report, provided: "Adjusted gross income shall be defined by Section 62 of the Internal Revenue Code . . . ." In turn, Internal Revenue Code section 62 provided: " 'adjusted gross income' " of an individual is gross income reduced by various deductions, including those attributable to "property held for the production of rents or royalties." Revenue and Tax Code section 17072, subdivision (b) expressly referred to Internal Revenue Code section 167(a). That section allowed "as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—[¶] (1) of property used in the trade or business, or [¶] (2) of property held for the production of income."

If the staff recommendations had been enacted, section 4722 would have included a deduction for depreciation in determining annual "net disposable income" given the express references to the tax code definitions of adjusted gross income. But the staff recommendations were not adopted into law. Instead, later amendments to Assembly Bill No. 1527 (1983–1984 Reg. Sess.) completely reorganized sections 4721 and 4722. Part of the reorganization moved "annual gross income" from section 4722 to section 4721 which then read, in relevant part: "4721 (a) The annual gross income of each parent shall be determined and then adjusted to obtain the annual net disposable income. . . . The annual gross income means income from whatever source derived, except as specified in subdivision (b), and includes, but is not limited to, all of the following: [¶] . . . [¶] (2) Income from a private business, such

as *gross receipts from the business reduced by expenditures required for the operation of the business.*" (Italics added.) It is the italicized language which remains operative today.[8]

We conclude that the legislative history, although not dispositive, tends to point toward disallowing depreciation as a deduction from income in calculating child support. First, the Legislature earlier had before it language which by express mention of Revenue and Taxation Code section 17072 and indirect references to Internal Revenue Code sections 62 and 167(a) would have allowed depreciation of "property used in the trade or business" and "property held for production of income." If enacted, this rule would have applied to the depreciation claimed by father here. The proposed language, however, was rejected in favor of a provision which makes no reference to either depreciation or the tax code sections dealing with the subject.

Second, section 4721 as found in the earlier versions of Assembly Bill No. 1527 (1983–1984 Reg. Sess.) used the phrase "expenses directly incurred in carrying on a trade or business." In its final enactment the statute read: "expenditures required for the operation of the business." This change suggests a limiting of broad language from the earlier draft. Although a review of the dictionary definitions of "expenditure" and "expense" reveals some commonality and overlap, "expenditure" is derived from "to expend" which means "to pay out or distribute: spend; . . . to consume by use." (Webster's 3d New Internat. Dict. (1981) p. 799.) An expense, in an accounting sense, means "an item of outlay incurred in the operation of a business enterprise allocable to and chargeable against revenue for a specific period." (*Id.* at p. 800.) As the Fourth District distinguished the terms in a different context: "The word 'disbursement' means funds paid out, and the word 'disburse' means to expend or pay out. (Webster's 3d New Internat. Dict. (1981) p. 644.) The word 'expense' is defined as cost or the financial burden involved typically in a course of action. (Webster's, *supra*, at p. 800.)" (*Ferrell v. County of San Diego* (2001) 90 Cal.App.4th 537, 543 [108 Cal.Rptr.2d 681], fn. omitted.) Using these definitions, an expenditure involves the paying out of something, usually cash, for, by way of example, rent, equipment or inventory. By contrast, an expense is the cost of doing business and may or may not involve an actual payment of money. An expenditure of money obviously reduces the amount of money available to pay child support; not necessarily so for an expense. Here, father does not contend that his depreciation deduction reflected an actual payment of money.

---

[8] "Private business" was changed to "the proprietorship of a business" in section 4721, subdivision (a)(2) in Assembly Bill No. 1527 (1983–1984 Reg. Sess.) as amended June 21, 1984.

Although we find the legislative history helpful, it is not conclusive. Thus, we turn to other markers of legislative intent.

    (v)   *Consideration of Section 4058 in Light of Related Provisions of the Welfare and Institutions Code and the California Code of Regulations*

    ■   In addition to a statute's history, we also may interpret one statute in light of related legislation. " '[A] statute is not to be read in isolation; it must be construed with related statutes and considered in the context of the statutory framework as a whole. [Citation.]' " (*Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 505 [108 Cal.Rptr.2d 10].) This exercise is designed to allow statutes to "be harmonized, both internally and with each other." (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 994 [94 Cal.Rptr.2d 643].) Statutes in one code may be considered with those in another code. (*Estate of Burden v. Agnew* (2007) 146 Cal.App.4th 1021, 1028 [53 Cal.Rptr.3d 390] [legislation "on the same or similar subjects" may be examined to ascertain the Legislature's probable intent]; see also *In re Mark K.* (1984) 159 Cal.App.3d 94, 106 [205 Cal.Rptr. 393] [Civ. Code interpreted in light of Welf. & Inst. Code].)

Our review of certain provisions in the Welfare and Institutions Code and the California Code of Regulations assists us in our understanding of section 4058. Parents of disabled children who receive certain state services are required to pay a portion of the costs of those services according to the parents' income. (See, e.g., Welf. & Inst. Code, §§ 4782 [parents of minor children receiving 24-hour out-of-home care or who reside in a state hospital], 4783, subd. (b)(1) [parents of developmentally disabled children who reside in the home].) California Code of Regulations, title 17, sections 50207 and 50251 prescribe the procedures for determining the amount parents are required to contribute under the respective Welfare and Institutions Code programs. In calculating a parent's share, no deduction from income is allowed for depreciation. Thus, California Code of Regulations section 50207 states: "[I]ncludible income from the operation of a business or from self-employment is the net income after deducting business expenses. However, depreciation, amortization, and depletion shall not be allowed as business expense deductions." California Code of Regulations section 50251 uses nearly identical language: "Income from the operation of a business or from self-employment is the net income after deducting business expenses. Depreciation, amortization, and depletion shall not be allowed as business expense deductions."

There are no reported cases on these provisions, but the regulations reflect a legislative determination that depreciation should not be taken into account in deciding the amount a parent must pay for these programs. Admittedly the

state's interest in reducing its participation in public assistance programs is not necessarily coextensive with its interest in ensuring fairness in child support payments under the Family Code. Nevertheless, the essential question raised in both situations is whether it is appropriate to reduce income by amounts attributable to the depreciation of certain assets. In the former, the answer is an express "no," and that assists us in our decision here.

> (vi) *Treatment of Depreciation in Calculating Child Support in Other States*

Although apparently one of first impression in our state, other jurisdictions have grappled with whether depreciation is to be taken into account in child support awards. (See Annot., Treatment Of Depreciation Expenses Claimed For Tax Or Accounting Purposes In Determining Ability To Pay Child Or Spousal Support (1995) 28 A.L.R.5th 46, and cases cited.) In some states the question is largely answered by statute. (See, e.g., Ohio Rev. Code Ann., § 3119.01, subd. (C); Alaska Rules Civ. Proc., rule 90.3, com. III(B).)[9] In other states where the statutory scheme is silent or incomplete, the courts necessarily have made the determination. (See, e.g., *Labar v. Labar* (1999) 557 Pa. 54 [731 A.2d 1252, 1255]; *Baker v. Baker* (Ariz.Ct.App. 1995) 183 Ariz. 70 [900 P.2d 764]; *Stoner v. Stoner* (1972) 163 Conn. 345 [307 A.2d 146, 151–152].)

In *Stoner v. Stoner,* the Connecticut Supreme Court surveyed case law in other jurisdictions and observed "three different basic approaches to the

---

[9] In determining child support under the Ohio Revised Code Annotated, "ordinary and necessary business expenses" are subtracted from the "gross receipts from business." (See Ohio Rev. Code Ann., § 3119.01 [child support computation worksheet].) Subdivision (C)(9) of section 3119.01 provides that ordinary and necessary expenses mean actual cash items expended by the parent or the parent's business and "includes depreciation expenses of business equipment as shown on the books of a business entity." It also states that except as enumerated above, " 'ordinary and necessary expenses incurred in generating gross receipts' does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business." (Ohio Rev. Code Ann., § 3119.01 (C)(9)(b).) Thus by statute, only depreciation for business equipment is allowed. (See *In re Sullivan* (2006) 167 OhioApp.3d 458 [2006 Ohio 3206, 855 N.E.2d 554, 558–559].)

Alaska, by contrast, distinguishes between straight-line and accelerated depreciation. According to the commentary to rule 90.3 of the Alaska Rules of Civil Procedure: "Income from self-employment, rent, royalties, or joint ownership of a partnership or closely held corporation includes the gross receipts minus the ordinary and necessary expenses required to produce the income. Ordinary and necessary expenses do not include amounts allowable by the IRS for the accelerated component of depreciation expenses . . . or any other business expenses determined by the court to be inappropriate." In *Eagley v. Eagley* (Alaska 1993) 849 P.2d 777, 781, the court held that a deduction for straight-line depreciation of business real estate is allowable as an ordinary and necessary business expense, in light of the commentary's statement that accelerated depreciation should not be allowed. (See also *Neilson v. Neilson* (Alaska 1996) 914 P.2d 1268, 1273; *Ogard v. Ogard* (Alaska 1991) 808 P.2d 815.)

problem, namely, that (1) depreciation is a book figure which does not involve any cash outlay nor reduce actual dollar income and, therefore, should not be allowed as a deduction; that (2) depreciation diminishes income-producing capacity and leads to the eventual replacement of the asset involved thereby warranting its deduction; and that (3) depreciation should not categorically either be deducted as an expense or treated as income, but rather that the extent of its inclusion, if any, should depend on the particular circumstances of each case. [Citations.]" (*Stoner v. Stoner, supra,* 307 A.2d at p. 151.)

Irrespective of which of the three approaches are utilized, appellate decisions on the subject generally recognize that (1) depreciation is an accepted business expense for tax and other purposes, and (2) any reduction in the income factor of the support equation necessarily reduces the amount available for support of a child.[10]

Cases denying depreciation tend to focus on the realities of depreciation in the context of cash available for child support. For example, the Connecticut Supreme Court ultimately concluded that its trial courts maintained discretion to consider depreciation. In *Stoner v. Stoner,* the court affirmed a trial court's order denying a downward adjustment to income for depreciation expense. In distinguishing depreciation from out-of-pocket expenses, the court explained: "Depreciation is a mere book figure which does not either reduce the actual dollar income of the [parent] or involve an actual cash expenditure when taken. On the contrary, it represents additional cash available to the [parent] by permitting substantial tax deductions and, ultimately, tax savings." (*Stoner v. Stoner, supra,* 307 A.2d at p. 152.) Similarly, the Pennsylvania court in *McAuliffe v. McAuliffe* (1992) 418 Pa.Super. 39 [613 A.2d 20, 22], observed that calculation of a party's income in the context of determining support payments "must reflect actual available financial resources and not the oft-times fictional financial picture which develops as the result of depreciation deductions taken against . . . income as permitted by the federal income tax laws." (See also *Cunningham v. Cunningham* (1988) 378 Pa.Super. 280 [548 A.2d 611, 612–613].)

The general test in New York is that in "determining the amount of support payments a party is capable of paying, it is the party's net income adjusted for business expenses that should form the basis of the calculations."

---

[10] *Stoner v. Stoner* addressed depreciation in the context of both spousal and child support. (*Stoner v. Stoner, supra,* 307 A.2d at pp. 151–152.) Whether depreciation should be treated the same for both types of support is likely to be a function of a particular state's statutory scheme. In California, child support and spousal support are found in different parts of the Family Code. (See §§ 3900 et seq. [child support], 4300 et seq. [spousal support].) As the parties do not raise any issue of spousal support, we do not address the subject.

(*Cannan v. Cannan* (1981) 79 A.D.2d 1085 [436 N.Y.S.2d 133, 134].) But in defining income and expenses: "Paper losses and expenses not actually incurred should not be taken into account." (*Dobbins v. Dobbins* (1977) 59 A.D.2d 548 [397 N.Y.S.2d 412, 414] [child and spousal support under separation agreement].) Finally in Ohio, the Court of Appeals acknowledged the economic underpinnings of its child support statute which limits allowable depreciation to only business equipment. (Ohio Rev. Code Ann., § 3.119.01(C)(9)(a).) "The exclusion of other types of depreciation 'is designed to ensure that a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support.' (*Baus v. Baus* (1991), 72 Ohio App.3d 781, 784, 596 N.E.2d 509.)" (*Foster v. Foster* (2002) 150 OhioApp.3d 298 [2002 Ohio 6390, 780 N.E.2d 1041, 1044].) Deduction for building depreciation was disallowed. (*Ibid.*)

In contrast, courts that have allowed income to be reduced by depreciation expense have often relied on the traditional treatment of depreciation for tax purposes. Thus, in *Spotts v. Spotts* (Fla.Dist.Ct.App. 1978) 355 So.2d 228, 229, Florida's District Court of Appeal referred to provisions of the Internal Revenue Code authorizing depreciation deduction as its basis for reducing a lump sum support payment. "The Congress of the United States has recognized that before a net income figure can be reached, depreciation of the property used to produce income must be deducted. Depreciation, therefore, is not income. It is a cost of producing income." (*Ibid.*)

In *Turner v. Turner* (Del. 1991) 586 A.2d 1182, the Delaware Supreme Court also considered the traditional role of depreciation in the determination of business income. "This Court has acknowledged that since depreciation is considered by generally accepted accounting principles to be an expense in determining net taxable income, it *may* also be a legitimate business expense for the purpose of computing the amount of net income which is available for child support, pursuant to [Delaware's support formula]. [Citation.] The concept of depreciation, as an expense, is a recognition of the fact that certain fixed assets, which are used in a business, wear out gradually and will eventually need to be replaced. [Citation.] The simplest form of this concept is known as straight line depreciation. If straight line depreciation is used, the difference between the original cost of an asset and its scrap value is divided by the asset's estimated useful life. The quotient is treated as the annual depreciation 'expense.' " (*Turner, supra,* 586 A.2d at p. 1187.) The court allowed straight-line but not accelerated depreciation. (*Id.* at p. 1189; but see *Emsley v. Emsley* (Del.Fam.Ct. 1983) 467 A.2d 700, 704 ["purposes and policies of the Internal Revenue Code are far different from" the Delaware child support law].)

Given the varied treatment of depreciation in states, that case law is of only marginal assistance.

### (vii) Depreciation of Rental Property May Not Be Deducted from "Annual Gross Income" in Calculating Child Support in California

■ Based on our review of the statutory language and other extrinsic aids, we hold that depreciation of rental property is not deductible in calculating child support under sections 4058 and 4059.

First, although "income" is broadly defined in the statutory child support scheme (*Cheriton, supra,* 92 Cal.App.4th at p. 285), deduction provisions are specific and narrowly construed (*Stewart v. Gomez, supra,* 47 Cal.App.4th at p. 1755). We find the Legislature's choice of the words "expenditure[],", "required," and "operation of the business" in section 4058 are words of limitation. "Expenditure" suggests an actual outlay of cash or other consideration. Depreciating an asset does not involve a reduction of cash available for child support. Nor is depreciation "required" for the operation of a business. A proprietor cannot operate a business without inventory, without employees, without paying taxes, and so forth. A business can be conducted without a deduction for depreciation. We conclude that "operation of the business" means ordinary and necessary business expenditures directly related to or associated with the active, day-to-day conduct of a business. (See, e.g., *Mandel v. Myers* (1981) 29 Cal.3d 531, 543 [174 Cal.Rptr. 841, 629 P.2d 935] [Budget Act defines " 'operating expenses and equipment' " in terms of expenditures required " 'for purchase of materials, supplies, equipment, services . . . .' "]); c.f. *Keller v. Chowchilla Water Dist.* (2000) 80 Cal.App.4th 1006, 1013 [96 Cal.Rptr.2d 246] [in a dispute regarding whether the water district's purchase of water was a capital cost, or maintenance and operation expense exempt from the assessment procedure under Prop. 218 (Cal. Const., art. XIII D, § 5), the court noted "maintenance and operation expenses" means the cost of rent, repair, replacement, rehabilitation, fuel, power, electrical current, care and supervision necessary to properly operate and maintain a permanent public improvement]; *Kirkpatrick v. City of Oceanside* (1991) 232 Cal.App.3d 267, 281 [283 Cal.Rptr. 191] [discussing an earlier unpublished opinion in which the appellate court found land lease costs were " 'debt service expenses' " specifically excluded by ordinance from the definition of "normal operating expenses"].) Depreciation of a business asset, by its very nature, is not essential to the day-to-day running of the business, but is intended to promote the continuity of the business over a longer term.[11]

---

[11] We do not suggest that promotion of the long-term health of a business is unimportant; only that the Legislature did not allow a deduction for it in calculating child support. (Cf. *Mejia, supra,* 31 Cal.4th at p. 671 [assets at the time of dissolution "play little part" in calculating

Second, as recognized by several other jurisdictions, depreciation is a fictional loss that, in the real world represents tax savings and, therefore, additional cash available to the parent to meet child support obligations.

■ Third, the policies identified by our statutes favor the construction we place on sections 4058 and 4059. The overriding policy of the statutory formula is to place the interests of children "as the state's top priority." (§ 4053, subd. (e).) Thus, a parent's principal obligation is to support his or her minor children according to his or her circumstances and ability to pay in order to improve the lives of the children. (§ 4053, subds. (a), (d), (f); see *Cheriton, supra*, 92 Cal.App.4th at p. 283.) Simply put, these policies are at odds with a child's receiving less financial support from a parent who is permitted under tax laws and accounting principles to take a deduction that does not reduce funds available for support.[12]

■ Here, the trial court erred in allowing father a $57,000 deduction from rental income.

Accordingly, we remand to the trial court for recalculation of father's annual gross income and annual net disposable income without reduction for depreciation.

   b., c.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2.  *The Trial Court Was Required to Make Findings on Uninsured Medical Expenses**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed in part and reversed in part and remanded. The cause is remanded to the trial court with directions to (1) recalculate child

---

child support]; *In re Marriage of Henry, supra*, 126 Cal.App.4th at p. 119 [generally unrealized increase of value of assets not considered in determining child support].)

[12] Our opinion addresses only depreciation deductions from rental income. The parties do not raise, and we have not considered, other types of depreciation, such as for equipment, nor do we address the treatment of actual reserve accounts (see *City of Los Angeles v. Public Utilities Com.* (1975) 15 Cal.3d 680, 685 [125 Cal.Rptr. 779, 542 P.2d 1371]; *Oceanside Mobilehome Park Owners' Assn. v. City of Oceanside* (1984) 157 Cal.App.3d 887, 895 [204 Cal.Rptr. 239].) Nor do we consider whether increased value of assets or depreciation can be considered "special circumstances" under sections 4052 and 4057, subdivision (b)(5). (See *Mejia, supra*, 31 Cal.4th at p. 671.)

*See footnote, *ante*, page 1407.

support consistent with the views expressed herein including (a) denying any deduction from rental income for depreciation; (b) treating father as the owner of 100 percent of all five properties discussed; (c) imputing income on the proceeds of the refinancing transactions; (d) determining whether father had income from coin operated machines; and (e) considering whether father was receiving actual or in kind management fees; and (2) Make specific findings as to the apportionment of the children's uninsured medical expenses. Mother shall recover her costs on appeal.

Cooper, P. J., and Boland, J., concurred.