Filed 4/23/18; Certified for Publication 5/21/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of LESLIE P. and ROBERT D. RODRIGUEZ.<br><br>_____<br><br>LESLIE P. RODRIGUEZ,<br><br>    Respondent,<br><br>      v.<br><br>ROBERT D. RODRIGUEZ,<br><br>    Appellant,<br><br>STANISLAUS COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>    Respondent. | F074367<br><br>(Stanislaus Super. Ct. No. 404450)<br><br><br>**OPINION** |

APPEAL from an order of the Superior Court of Stanislaus County. Jack M. Jacobson, Judge.

Robert D. Rodriguez, in pro. per., for Appellant.

No appearance for Leslie P. Rodriguez, Respondent.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Linda M. Gonzalez, and Ricardo Enriquez, Deputy Attorneys General, for Respondent.

-ooOoo-

In this family law matter, appellant Robert Rodriquez (Robert) appeals from an order of the trial court directing him to pay respondent Leslie Rodriquez (Leslie)[1] $1,273 per month in child support for their three children. Robert contends the trial court erred in its calculation of child support by (i) not allowing him to deduct asset depreciation in computing his business income, and (ii) deviating from statutory child support guidelines without an adequate evidentiary basis for doing so. Additionally, Robert argues that reversal is required because the trial court failed to address his request for an award of costs as sanctions. We disagree and find no reversible error or abuse of discretion has been shown. Accordingly, the order of the trial court is hereby affirmed.

### FACTS AND PROCEDURAL HISTORY

Robert and Leslie have three children, G.R., A.R., and J.R., born in 1998, 1999 and 2001, respectively.[2] The three children were adopted by Robert and Leslie during their marriage. On April 29, 2008, the trial court entered a judgment dissolving the marriage. Based on a marriage settlement agreement executed by the parties, the trial court reserved the issue of child support. In 2010, Robert and Leslie stipulated that Leslie would have full legal and physical custody of the children, and, at that particular time, child support would be set at zero.

On January 8, 2015, the Department of Child Support Services (the Department) filed a motion to modify child support. On March 5, 2015, the trial court issued a temporary support order and set the matter for a long cause hearing. The temporary support order required Robert to pay $1,500 per month to Leslie as support for the three children until a final determination of child support could be made at the long cause hearing. A guideline calculation was attached to the temporary support order. It indicated, among other things, that Robert's monthly income was $7,100 and that he was given a deduction of $975 for child

---

[1] Now named Leslie Mattucci.

[2] We use initials rather than names in an effort to preserve the children's privacy.

2.

support paid for a child from a different relationship. We refer to this other child of Robert's by her initials, A.C.R.

The long cause hearing was continued on several occasions. In the meantime, Robert requested a reduction of the temporary support order in this case based on a stipulation he made in another court (the Contra Costa County Superior Court) to increase the amount of child support he would pay for A.C.R. (the child from the other relationship) from $975 to $1,850. The trial court declined to consider Robert's request at that time due to a lack of evidence that Robert had actually been paying the $1,850. The trial court advised the parties that it would consider any evidence at the long cause hearing regarding payment of this increased child support in calculating guideline support.

In the months prior to the long cause hearing, Robert and Leslie litigated certain custody and visitation issues, including potential reunification therapy between the children and Robert. On March 10, 2016, the trial court ordered that full legal and physical custody would remain with Leslie, and that reunification therapy would be "on hold" pending a child custody counseling review in April 2016. On April 4, 2016, the trial court issued an order reflecting that further counseling and therapy was needed on Robert's part "regarding [his] hostility and anger and how to address in treatment." Further, the same order stated that Robert and Leslie "mutually agree[d] to waive any objections to the submission of written correspondence from treatment providers for the upcoming long cause hearing on 6/13/16."

In anticipation of the long cause hearing, Robert filed a motion in limine seeking to exclude any evidence or documents not produced prior to May 13, 2016. The motion was based on Robert's assessment that Leslie failed to respond to certain discovery matters and/or was failing to honor discovery or other cut-off dates.[3] The trial court denied Robert's motion

---

[3] We note that on August 25, 2015, when the long cause hearing was continued to June 13, 2016, the trial court also set a settlement conference date for May 6, 2015, and instructed the parties to serve all documents intended to be produced at trial by the time of the settlement conference date. Subsequently, however, on April 4, 2016, the parties entered their stipulation (which was made part of the trial court's order of that date) allowing that letters from

in limine, finding that it would be more appropriate for evidentiary objections to be raised individually during the course of the hearing, where they would be considered by the trial court on a case-by-case basis. Robert responded that he was "fine with that" and assured the trial court he would be making many objections.

The June 13, 2016, Long Cause Hearing

The long cause hearing regarding child support was commenced on June 13, 2016. Robert and Leslie each appeared in propria persona, and the Department appeared through its attorney. One of the primary issues in dispute was Robert's income from his law practice, including the amount of his business expenses. Robert was in sole practice, with offices in Modesto and Walnut Creek. Robert's tax returns for years 2012 to 2014 were received into evidence. Per court order, Robert also submitted a profit and loss statement for 2015 and another profit and loss statement for the first five months of 2016. According to the profit and loss statement for 2015, Robert's gross receipts from his law practice were $145,100, his business expenses (relating to his law practice) were $91,076 and his net business income was $52,085. The partial 2016 profit and loss statement, projected over the entire year, showed similar numbers. One of the items asserted by Robert as a business expense or deduction was that of depreciation relating to his motor vehicles. Averaged on a monthly basis, Robert's claimed depreciation was $536 per month over the relevant time period of 2015 to 2016.

At the hearing, Robert admitted that the reason he chose to voluntarily increase his child support for A.C.R. in the Contra Costa County case from $975 to $1,850 was that he sought to "use the [Contra Costa County order] court payment to offset the one here." Robert maintained that A.C.R. needed the money more. He testified that since his three children in

treatment providers may be submitted to the court without objection for purposes of the long cause hearing. It is unclear whether Robert's motion in limine referenced the earlier August 25, 2015, order. In any event, at the outset of the long cause hearing, the trial court denied the motion in limine and held it would not make a blanket preclusion of evidence, but would consider individual evidentiary objections as they were raised during the course of the long cause hearing. The validity of the order denying the motion in limine is not before us.

4.

the present case were receiving adoption assistance, and since Leslie's new spouse could help financially, they would be adequately taken care of and did not need as much child support from him. When asked about his ability to meet his combined child support obligations in this case and in the Contra Costa County case, Robert noted that his new spouse pays most of the household expenses, which allows him to devote more of his income to meet his support obligations.

Leslie testified that she and Robert adopted their three children during their marriage, for whom she receives total monthly adoption assistance of $5,847.[4] According to Leslie, when the three children were adopted, she and Robert understood that the children had special needs. She testified that all three children suffer from Fetal Alcohol Syndrome and thus "have significant needs" that would prevent them from ever being self-supporting. She testified that the children have required 24-hour supervision, ongoing therapy, and individualized education plans in school. Further, Leslie stated the children needed help getting dressed, assistance at school in getting from one class to the next, and further, she described their mental maturity as that of toddlers despite being in their mid to late teens. Leslie testified that the adoption assistance she receives each month covers ordinary living expenses but only a portion of the out-of-pocket costs of the children's "extensive" medical or other special needs.[5]

Tentative Decision

On June 22, 2016, the trial court issued its tentative decision, which ultimately became the basis for the trial court's final order on the issues presented at the long cause hearing.

Based on Robert's profit and loss statements for 2015 and 2016, the trial court found that Robert's average monthly income was $4,454, *plus* an additional monthly amount of $536

---

[4] The trial court's order referred to the adoption assistance as being in the sum of $5,791 per month. It is not clear why the numbers differ, but it is only a minor and immaterial discrepancy from the amount testified to by Leslie.

[5] She acknowledged that the children have some health insurance coverage through Leslie's new spouse as well as through Medicaid.

that Robert had excluded from income under a depreciation deduction. In other words, the trial court accepted the profit and loss statements (as substantial evidence of Robert's business income) but did not allow Robert to subtract depreciation from his business income available for child support purposes, and thus the claimed depreciation deduction was added back into Robert's income. Relying on *Asfaw v. Woldberhan* (2007) 147 Cal.App.4th 1407, at pages 1425 through 1426 (*Asfaw*), the trial court explained that asset depreciation is "not an actual business expense" but merely a permitted tax deduction, and therefore it is not to be excluded from income calculations for child support purposes. Pursuant to Family Code[6] provisions, the trial court did deduct the $1,850 per month that Robert paid in child support for his other child, along with $496 in monthly health insurance premiums, which represented the cost of coverage for Robert and his child in the Contra Costa County case. Further, for purposes of calculating guideline support, the trial court noted that Leslie had the children in her care and custody 100 percent of the time, and Robert had no visitation. Therefore, "a zero timeshare" factor was used in calculating the guideline child support payable by Robert.[7] Based on these and other findings, the trial court arrived at guideline child support for the three children of $772 per month.

However, the trial court *also* found that the evidence warranted an upward deviation from guideline support pursuant to subdivision (b) of section 4057, based on special circumstances. The trial court explained: "In this case, there are two grounds for finding special circumstances to deviate upward from guideline support. First, all three children have special needs. The parties adopted the children knowing of their medical condition. Admitted into evidence is a letter from the children's psychiatrist. All three children have been

[6] Unless otherwise indicated, all statutory references are to the Family Code.

[7] The trial court was aware of the income of Robert's new spouse, and the income of Leslie's new spouse. It does not appear that the new spouse incomes were used in computing guideline support. (See § 4057.5, subd. (a)(1) & (2) [income of obligor parent's spouse and of obligee parent's spouse generally not considered, except to avoid hardship in extraordinary circumstances].)

diagnosed with Fetal Alcohol Syndrome[,] which is a neuro-developmental disorder which causes lifelong impairments and typically means that the individual cannot live independently. All three children are extremely vulnerable and require close supervision. In the doctor's opinion, [Leslie] will be their caretaker for the rest of their lives. She will require financial assistance well into the children's adult years. [¶] [Leslie] testified that she incurs out of pocket expenses for the children's care that are not covered by insurance or are in excess of the monthly adoption allowance for each child. [Leslie] is not able to work full time in order to care for the children's daily needs."

The trial court then explained the second reason justifying a departure upward from guideline support in this case: "A second and significant ground for finding special circumstances is [Robert's] unilateral decision to agree to pay child support to [A.C.R.'s] mother well in excess of guideline support, thereby significantly decreasing the support paid to the children in this case. …The guideline support for his daughter [A.C.R.] was only $524 per month. [Robert] agree[d] to pay $1,850 which is 3 times the guideline amount. [¶] [Robert] was candid when explaining his reason for paying such a larger amount for his youngest child thereby resulting in a significant decrease in guideline support for his 3 older children. He believes that [A.C.R.'s] mother is more in need of financial assistance than the mother of his 3 older children. He indicates that [Leslie] receives a substantial amount of money though the adoption allowances to the children. [¶] The Court finds that applying the guideline formula would be unjust and inappropriate because the children will receive an extremely low amount of support in comparison to [Robert's] youngest child. There is no evidence that [A.C.R.] has any special needs and [Robert] has not presented any evidence that the payment of guideline support to [A.C.R.'s] mother will be insufficient along with her income to provide for her daily needs. Furthermore, the Court believes that [Robert's] actions in part are a result of his frustration and anger in not being able to reestablish his relationship with his oldest children. He places most of the blame on their mother. His children should not be punished for the actions of their of their parents."

Accordingly, the trial court deviated from guideline and set child support at $1,273 per month. The trial court noted that because the parties' oldest child would soon turn 18 (i.e., on June 25th of that year), support for that child would terminate by operation of law,[8] at which time support would be $1,018 per month commencing July 1, 2016, for the other two children.

---

[8] At the hearing, Leslie orally requested a continuation of child support for the oldest child, even past the age of 18, based on his special needs. The trial court declined to consider that issue, since it was not contained in her petition. The trial court directed Leslie to file a separate motion for such adult child support.

Other issues were addressed in the trial court's tentative decision, including medical reimbursement and appointment of a new reunification therapist. Prior custody orders remained in effect; i.e., Leslie continued to have full legal and physical custody of the children. The trial court concluded its tentative decision by noting that Robert had requested a statement of decision, and the trial court announced that the tentative decision "will become the statement of decision," unless a party "specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals not included in the tentative decision."

On June 30, 2016, Robert filed his written objection to the tentative decision. Among other things, Robert objected that the trial court should not have considered the psychiatrist's letter diagnosing the children's medical condition and describing the nature of their special needs and disabilities. Robert claimed that he did not receive the letter prior to trial, and thus he was denied an adequate opportunity to provide opposing evidence such as contrary expert testimony or to seek pretrial independent medical examinations of the children. He further objected that the trial court erred in adding back his claimed depreciation to his business income, and failed to provide a ruling on the issue of costs as sanctions.

Entry of Final Order

On July 12, 2016, a final child support order was issued by the trial court in accordance with the tentative decision, and a notice of entry of judgment was filed. Robert filed a timely notice of appeal from the final order. After Robert's opening brief was filed herein, the Department filed a respondent's brief supporting the trial court's order. Leslie did not file a brief in this appeal.

## DISCUSSION

### I. Standard of Review

"[A] determination regarding a request for modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below." (*In re Marriage of Leonard* (2004) 119

9.

Cal.App.4th 546, 555.) However, the trial court has a duty to exercise an informed and considered discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283.) Because the determination of child support is a highly regulated area of the law, the trial court's discretion is limited to that provided by statute or rule. (*Ibid.*) As long as the trial court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it. (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443.) To the extent the trial court's order addressed a question of law, appellate review thereof is de novo. (*Ibid.*)

## II. Depreciation Issue

Robert argues the trial court erred, as a matter of law, in disallowing his attempt to deduct depreciation when calculating his income. We disagree. The trial court properly followed the case of *Asfaw, supra*, 147 Cal.App.4th 1407, as we now explain.

In *Asfaw*, at a hearing to determine child support, the trial court calculated the father's business income by subtracting an amount the father claimed was depreciation of certain rental properties. The mother appealed, arguing that it was error to deduct depreciation from the father's income. The Court of Appeal agreed with the mother, concluding based on the language and legislative history of sections 4058[9] and 4059,[10] along with the polices underlying child support, that the claimed depreciation was not properly deductible in

---

[9] In relevant part, section 4058 defines the "annual gross income" of a parent to mean "income from whatever source derived." (§ 4058, subd. (a).) Such annual gross income includes "[i]ncome from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business." (*Id.*, subd. (a)(2).)

[10] Section 4059 specifies what may be deducted from annual gross income for purposes of determining the parent's annual net disposable income. The permitted deductions include actual expenditures such as taxes, union dues, health plan premiums, other child support paid, certain job related expenses, and a hardship deduction. (See § 4059, subds. (a)–(g).) Depreciation is not mentioned. Once annual net disposable income is determined, it is divided by 12 to arrive at monthly net disposable income (§ 4060), which is used in computing guideline support (see § 4055).

computing income for purposes of a child support determination. (*Asfaw*, *supra*, 147 Cal.App.4th at pp. 1425–1426.)

In summarizing the rationale for its conclusions, the Court of Appeal in *Asfaw* explained as follows:

> "First, although 'income' is broadly defined in the statutory child support scheme [Citation], deduction provisions are specific and narrowly construed [Citation.] We find the Legislature's choice of the words 'expenditures[],' 'required,' and 'operation of the business' in section 4058 are words of limitation. 'Expenditure' suggests an actual outlay of cash or other consideration. Depreciating an asset does not involve a reduction of cash available for child support. Nor is depreciation 'required' for the operation of a business. A proprietor cannot operate a business without inventory, without employees, without paying taxes, and so forth. A business can be conducted without a deduction for depreciation. We conclude that 'operation of the business' means ordinary and necessary business expenditures directly related to or associated with the active, day-to-day conduct of a business. [Citations.] Depreciation of a business asset, by its very nature, is not essential to the day-to-day running of the business, but is intended to promote the continuity of the business over a longer term [fn. omitted].

> "Second, as recognized by several other jurisdictions, depreciation is a fictional loss that, in the real world represents tax savings and, therefore, additional cash available to the parent to meet child support obligations.

> "Third, the policies identified by our statutes favor the construction we place on sections 4058 and 4059. The overriding policy of the statutory formula is to place the interests of children 'as the state's top priority.' (§ 4053, subd. (e).) Thus, a parent's principal obligation is to support his or her minor children according to his or her circumstances and ability to pay in order to improve the lives of the children. [Citations.] Simply put, these policies are at odds with a child's receiving less financial support from a party who is permitted under tax laws and accounting principles to take a deduction that does not reduce funds available for support. (*Asfaw*, *supra*, 147 Cal.App.4th at pp. 1425–1426.)

We discern no reason to depart from the cogent analysis of the Court of Appeal in *Asfaw*. Robert argues that the present case is distinguishable because *Asfaw* addressed depreciation of income-generating rental property, whereas here the depreciation was of Robert's motor vehicles. We fail to see any material difference between the two types of depreciation for purposes of the issue before us, and Robert has failed to demonstrate that the

11.

principles set forth in *Asfaw* would not apply here simply because a different type of depreciable asset was involved.[11]  Here, as in *Asfaw*, the asset depreciation did not actually reduce the parent's business income that was available to pay child support and did not otherwise come within the scope of any specific deduction permitted under sections 4058 or 4059.[12]  Therefore, the reasoning and conclusion articulated in *Asfaw* would apply with equal force to this case, and the trial court correctly followed *Asfaw* in disallowing Robert's deduction of depreciation.

## III.    Deviation from Guideline Support

By statute, the amount of child support established under the guideline formula is presumed to be the correct amount of child support.  (§ 4057, subd. (a).)  However, that presumption "may be rebutted by evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053,"[13] because of on one or more of the factors enumerated in section 4057.  (§ 4057, subd. (b).)  One such factor is that "application of the formula would be unjust or inappropriate due to *special circumstances* in the particular case."  (§ 4057, subd. (b)(5), italics added.)  The

----

[11] We acknowledge Robert's point that, from a business or tax-planning standpoint, differences may have existed between the context and impact of the rental real property depreciation described in *Asfaw* and the vehicular depreciation described in this case. However, for our purposes, the important point is what they shared in common.  In both instances, the claimed deduction merely represented an effort to measure an asset's incremental depreciation in value that did not actually reduce monthly income from the business for purposes of computing a parent's child support obligations.

[12] Robert's opening brief asserts in a conclusory fashion that the trial court took a business expense outlay and treated it as Robert's income.  That was clearly not the case.  As the record shows, what the trial court did was to disallow Robert's effort to subtract vehicle depreciation from his available income for purposes of child support.  Thus, the amount Robert had subtracted from income for depreciation in his profit and loss statements was, using a monthly average of $536 per month, added back into Robert's monthly income.

[13] Section 4053 sets forth a number of child support principles, foremost among them being protection of the child's best interest.  (§ 4053, subd. (e); *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1048.)

statute then elaborates that "*these special circumstances include*," but are not limited to "[*c*]*ases in which the children have special medical or other needs* that could require child support that would be greater than the formula amount." (§ 4057, subd. (b)(5)(C), italics added.)

"The 'special circumstances' exception of section 4057, subdivision (b)(5) gives the trial court 'considerable discretion to approach unique cases on an ad hoc basis.' " (*In re Marriage of Cryer*, *supra*, 190 Cal.App.4th at p. 1049, quoting *County of Lake v. Antoni* (1993) 18 Cal.App.4th 1102, 1106.) A trial court has "broad discretion" to determine when special circumstances apply. (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1361.) On review, "[w]e do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order." (*Id*. at p. 1360.)

Here, the trial court calculated guideline child support to be $772 per month payable by Robert, but also found that it was appropriate to deviate upward from that amount based on the existence of two special circumstances. First, the trial court found that the three children had special needs requiring long term care, close supervision and costly medical expenses. The necessity for Leslie to care for the special needs of the three children also prevented her from working fulltime outside the home. Second, the trial court found that Robert had unilaterally made arrangements to pay three times the guideline child support amount for his other child in Contra Costa County as a means of offsetting or reducing the amount of support for his three children in this case. Robert claimed his other child (A.C.R.) needed the money more, but there was no evidence that A.C.R. had any special needs or that the payment of guideline support to A.C.R.'s mother would be insufficient along with her income to provide for the child's daily needs. The trial court found it inappropriate for Robert to provide the three children in this case with "an extremely low amount of support in comparison to [his] youngest child."

13.

Based on the above-described findings of special circumstances, the trial court set child support at $1,273 per month, which amount was to be reduced in June of that same year to $1,018 per month when the parties' oldest child turned 18.[14]

In making the finding that the children had special needs, the trial court relied in part on a letter by the children's treating psychiatrist, Dr. Jennifer McKay. In her letter, Dr. McKay stated that although the parties' oldest child (G.R.) was "about to turn 18 years old, his developmental disabilities prevent him from transitioning to independent living and [he has] significant neuro-psychological deficits, problems with social interaction, and executive functioning." Further, in her letter, Dr. McKay stated as follows regarding all three of the parties' children: "[All three children] have been diagnosed with Fetal Alcohol Syndrome, a neurodevelopmental disorder which causes lifelong impairments and typically means that the affected individual cannot live independently. All three children are extremely vulnerable and require close supervision, direction and careful consideration of their environment. This requires close communication between adults at home, school, and at any activities in which the children are taking part. [¶] All three children have lifelong disabilities which require an ongoing high level of care, their mother, Leslie [] will be caring for all of them for the rest of her life. She is their sole full time caregiver. She will require financial assistance for these children well into their adult years."

In addition to Dr. McKay's letter, the trial court also relied on Leslie's own testimony regarding the children's special needs. Leslie testified about the extent of her out-of-pocket

---

**14** The trial court explained its method for arriving at the $1,273 figure: "In determining a proper amount of child support above the guideline, the Court analyzed the manner in which guideline support would be calculated for all 4 children. The Court first did a calculation of the amount of support father would pay to [A.C.R.] using the current financial information and the Court's finding of income. The Court arrived at a guideline amount for [A.C.R.] of $848. Using this amount as the deduction in calculating guideline support for [the parties three children in this case] guideline would be $1,273 per month. Based upon this analysis the Court will set support at this amount."

14.

medical expenses for the children, and the nature of her ongoing daily care of the children in light of their extensive needs, which also prevented her from being able to seek employment.

In challenging the trial court's order, Robert argues that the decision to deviate from guideline support constituted reversible error because the trial court relied on inadmissible hearsay evidence (i.e., the psychiatrist's letter) to establish the children's special needs. We reject Robert's claim of error for the reasons that follow.

Robert's assertion that the trial court should not have admitted or considered Dr. McKay's letter because it was hearsay is without merit because Robert consented to the admission of the letter by stipulation on April 4, 2016. The stipulation is contained in the trial court's order of that same date and states "the parties mutually agree to waive any objections to the submission of written correspondence from treatment providers for the upcoming long cause hearing on 6/13/16." Since Robert expressly consented to admission of such letters from the treating doctors, he will not be heard to complain about the issue on appeal. It is an established rule that "an order will not be disturbed on an appeal prosecuted by a consenting party." (*In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 488.) A stipulation is a consent within the meaning of this rule. (*Id*.) Moreover, a stipulation that no objection will be made to a procedure, ruling or other step in the trial court will cause the issue to be waived on appeal. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 395, p. 453; *Japan Food Corp. v. County of Sacramento* (1976) 58 Cal.App.3d 891, 897; see *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501.) Such was the case here.

Robert argues that the stipulation applied only to custody and visitation, not to child support issues. We reject this argument because the language of the stipulation is unqualified and contains no such limitation on admissibility. Indeed, the stipulation expressly referred to the upcoming long cause hearing, a hearing at which the primary issue to be decided was that of child support.[15] Furthermore, in addition to waiver by virtue of the stipulation, Robert also

---

[15] Robert notes that the parties' stipulation was set forth in an order bearing on visitation and reunification issues. While that was the setting in which the stipulation was

15.

did not raise a timely hearsay objection to the letter at the long cause hearing. When Leslie testified of the letter received by the court from the children's doctor and the diagnosis contained therein, Robert raised no objection. The trial court's tentative decision described the "letter from the children's psychiatrist" as having been "admitted into evidence," and it was identified by the court as Leslie's "Exhibit 3," and yet the record of the proceedings in the long cause hearing contains no hearsay objection to admission of the letter. We conclude that Robert's failure to object resulted in a waiver of the issue. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.) Based on the foregoing discussion, we reject as waived his assertion that the trial court erred by admitting the psychiatrist's letter on the ground that it constituted hearsay.

Robert also contends that Leslie's testimony about the special needs of the three children constituted improper expert testimony by a layperson. We disagree. At the long cause hearing, Leslie mentioned that the three children had been diagnosed with Fetal Alcohol Syndrome many years prior (i.e., 2008 or 2009), and she began to outline the nature of that medical condition based on what she had learned from her children's doctors. Robert then objected that Leslie is not an expert and cannot personally testify

reached and memorialized by the court, there is no indication in the broadly-worded stipulation that it applied only to visitation issues.

16.

about the implications of a medical diagnosis. The trial court allowed Leslie to continue to describe her children's situation but directed her to focus on the issue of the children's practical needs – i.e., "what she's required to do to raise them" and the "extent that they need to be cared for" -- rather than on the technical diagnosis. Thus, the record shows the trial court carefully avoided the error complained of by Robert. Moreover, the tentative decision reflects that the trial court only relied on Leslie's testimony about the extent and cost of the children's practical needs, her level of ongoing care and supervision of them, and the medical expenses. It is clear that such information was from Leslie's own personal observation of her children, as the custodial parent taking care of them on a daily basis, and did not require any expert knowledge. For these reasons, the trial court did not erroneously permit Leslie to give an expert opinion, nor did it rely on Leslie's testimony to establish any matter requiring the opinion of an expert. Therefore, the claim of error fails.

In passing, we would point out that even assuming the letter from the children's psychiatrist was improperly admitted into evidence by the trial court, Leslie's own testimony – which was also relied on by the trial court – adequately supported the trial court's finding of special needs. That is, even without the evidence of a technical medical diagnosis from the children's psychiatrist, Leslie's unrefuted testimony describing the children's daily needs and functional difficulties, the high level of care required for them at home and at school, and the out-of-pocket medical expenses for the three children that exceeded her adoption assistance by $500 to $1,000 per month, constituted substantial support for a finding of "special medical or other needs" justifying an upward deviation from guideline support. (§ 4057, subd. (b)(5)(C).)

In light of Robert's stipulation and waiver of the particular issue raised on appeal (i.e., admission of the doctor's letter), we conclude that Robert has failed to demonstrate any prejudicial error or abuse of discretion by the trial court. Moreover, substantial evidence supported the trial court's finding that special circumstances existed in this case, and we conclude on the basis of such special circumstances that the trial court reasonably exercised its broad discretion to grant an upward departure from guideline support.

**IV.     The Alleged Failure to Reach Robert's Request for Costs as Sanctions**

Finally, Robert argues the trial court erred by failing to address and/or issue an explicit ruling on his request for costs as sanctions against Leslie.  The record is exceedingly sketchy on this matter.  It appears that on December 31, 2015, in connection with custody and visitation issues, Robert moved for an award of costs, as sanctions under section 271, against Leslie.[16]  Robert did not request attorney fees in his motion, but only sought relatively minor costs described as "$130 RFO & Process Service Costs."  Robert's rationale for seeking such a cost award, as sanctions, was that Leslie allegedly violated prior visitation orders and failed to meet and confer in good faith concerning reunification therapy costs.

The record on appeal only provides a reporter's transcript of the first day of the long cause hearing addressing child support, not the remainder of the long cause hearing at which Robert would have had the opportunity to present evidence (if any) on the question of sanctions.  At the close of the first day of the long cause hearing, the trial court noted that the remaining issues of medical reimbursement, the reunification therapist, and "sanctions" would be heard the next morning.  On appeal, Robert complains "there was no trial" on the issue of sanctions.  However, in the absence of a reporter's transcript or other record of the relevant proceedings of the second day of the

---

[16] Section 271 provides, in part:  "(a) Notwithstanding any other provision of this code, the court may base an award of attorney fees and costs on the extent to which each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.  An award of attorney's fees and costs pursuant to this section is in the nature of a sanction."

18.

long cause hearing (i.e., June 14, 2016), we have no basis for concluding that the issue of sanctions was (or was not) actually tried, or whether any error may have occurred. For example, if Robert failed to pursue his motion for sanctions at the hearing by neglecting to introduce any evidence relating to the sanctions issue and/or failing to bring up the matter of sanctions at all, the trial court may have reasonably concluded the issue was abandoned by Robert. In any event, in the absence of an adequate record on appeal, Robert has failed to meet his burden as appellant of demonstrating a reversible error. (*Gee v. American Realty & Construction, Inc*. (2002) 99 Cal.App.4th 1412, 1416 [due to failure to provide an adequate record to allow meaningful review, the appellant failed to meet his burden and forfeited the issue].)

Additionally, even assuming Robert pressed forward on his request for sanctions at the long cause hearing, we note that a request for sanctions under section 271 is a motion concerning which a statement of decision is generally not required. (See *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1497.) Although an explicit ruling on sanctions was not evident here, an implicit ruling may be discerned. Looking to the record we *do* have of the trial court's analysis (i.e., the trial court's tentative decision and final order), the only wrongful or negative conduct found by the trial court relating to visitation or reunification matters was on the part of Robert (i.e., potential anger issues), but not on the part of Leslie. Therefore, even assuming Robert pursued or introduced evidence on his sanctions motion at the long cause hearing, we would conclude on the present record that the trial court implicitly rejected that motion. Of course, an order of the trial court is presumed to be correct on appeal, and error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) No such error has been shown.

19.

To reiterate, Robert failed to meet his burden as appellant on this issue. In particular, we are lacking an adequate record upon which to meaningfully review his claims relating to his motion for section 271 sanctions.

## DISPOSITION

The order is affirmed. Respondent, Department of Child Support Services, shall recover costs on appeal.

_____
POOCHIGIAN, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
ELLISON, J.†

---

† Retired judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20.

Filed 5/21/18

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of LESLIE P. and ROBERT D. RODRIGUEZ. _____ LESLIE P. RODRIGUEZ, Respondent, v. ROBERT D. RODRIGUEZ, Appellant, STANISLAUS COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, Respondent. | F074367 (Stanislaus Super. Ct. No. 404450) **ORDER** |

It appearing that part of the nonpublished opinion filed in the above entitled matter on April 23, 2018, meets the standards for publication specified in California Rules of Court, rule 8.1105(c), IT IS ORDERED that the opinion be certified for publication in the Official Reports with the exception of part IV. of Discussion.

POOCHIGIAN, Acting P.J.

WE CONCUR:

DETJEN, J.

ELLISON,\* J.

---

\* Retired judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.